I'd like to reserve two minutes for a rebuttal. Counsel, you will need to monitor it yourself, so watch your time. Thank you. I'm Melody Walcott. I'm with the Federal Defender Office in Fresno, and I was trial counsel in this matter. I'd like to concentrate my time, obviously unless the court has questions, on the mandatory minimum and Eighth Amendment arguments and the photo arrays argument. Mr. Carrillo Valenzuela received a sentence of over 167 years. He's eligible for parole on May the 12th of 2021-50. His priors, up to the point of his conviction in this offense, his priors had given him a maximum of a two-year sentence, which was his last prior, the deported alien found in a U.S. prior. The case in this case, obviously, was a case of eight robberies committed over, I believe, over about a six-month period of time. My memory is failing me on that. No shot was fired. We were asked to find and did find that a weapon was carried in each robbery except for one. And on that one, Mr. Carrillo Valenzuela was acquitted. If the statute provided that a repeat offender committed armed robbery shall get a minimum term of mandatory life term, would that be an Eighth Amendment violation? I think that could be an Eighth Amendment violation. I think that what the cases are asking the court to do is to look at some of the circumstances behind each individual in making a decision. That's what the Eighth Amendment asks the court to do. Well, the vote has sailed on that, hasn't it, since Congress adopted mandatory minimum sentences. That pretty much throws out individual consideration. And, of course, our position is that that, in light of Booker and Booker's holding about individual sentences creates a problem for this court. And I think when we look at, for Mr. Carrillo, what we look at is what his priors were. I noticed that in looking at the line of cases dealing with the Eighth Amendment, what the court spent some time discussing was what was the trigger offense, what was the offense that brought the individual into the court. And Mr. Carrillo's offense is a serious offense, and we're not trying to walk away from that aspect of it. They're not just one. There are eight armed robberies. Yes. And under the court's description, he's a repeat offender. He would be. We can't walk away from that. But I think we still have to look at the problem is, and the courts recognize this, the problem is that after Booker, we are running kind of face-to-face here with the problem with mandatory minimums. And I think what we need to look at, particularly with 924C, is that 924C gives no room to work. 841 drug statutes have a mandatory minimum. They have a floor for the court where the court has to start. But in 924C, that's it. What the sentence is under the statute is what the sentence is. There's no room. There's no place to go. And in a case where we have several robberies, then we are simply doing a game of calculation, where we're simply starting with five and then adding 25 and then adding 25, and there is no place, no room for the 3553 factors. The other thing I wanted to focus on, and I probably should have mentioned this first, is I have never practiced in the state of California. And so my argument about the California law assumed a maximum sentence for Mr. Carrego on each charge. And that's how I reached 118 years. In discussing what might actually happen with colleagues, first of all, of course, we note that the state would have more room for negotiation. They may negotiate some of these offenses as lesser-included. They may negotiate them some other way. But they would also, I understand, have room under one of the statutes in the way that Mr. Carrego would be sentenced, even if he went to trial, as he did in this matter, on each robbery. And so I just wanted to mention that to this Court. I wanted to also talk briefly about the photo arrays because we have a very clear picture of the photo arrays. And the photo arrays basically had Mr. Carrego in the same position in each photo array. And we're not arguing anything about the way the photo arrays were actually shown to the witnesses. We're not arguing about the language that the officers used. But we're looking at the photo arrays themselves. And it's clear that in looking at the photo array that Mr. Carrego's picture, even the court noted, trial court noted that the picture stands out. It's darker. And our argument, the court did not agree with our argument that the other men were noticeably bigger. But they are, when you look at the government's brief on this matter, they are some 20 or more pounds bigger. And they are visibly a different size from Mr. Carrego. So our position is on that matter that this makes this photo array impermissibly suggestive as to Mr. Carrego. Thank you. I will save the rest of my time for rebuttal. Okay. Thank you. May it please the Court, my friend, Ms. Walcott, my name is Deuce Rice. I was the lead trial prosecutor for the United States in this case. What I'd first like to do is I brought with me the actual photo lineups that were the trial exhibits. And if I can give those to the court to take a look at. Is that different from what you have in the supplemental ER? It is a little bit. When I tried to photocopy those, they came out considerably darker. So if I could bring these up to the court. I've never done this before this way, but. That way the court will. Do you have a copy for counsel as well? I have the copy in the SDR that I gave her. Those are the actual one and only actual photo arrays that the witnesses actually were shown by the detectives. Is that a single copy? Single copy. Each exhibit so that the court can look at what the district court had at the time that it was looking at the photo arrays. I think the court will notice that on the SDR, when I tried to photocopy it, Mr. Carrillo's background came out considerably darker than shown there in those. Looks like everybody's background came out a little darker. Correct. There were basically two different motions to suppress this particular photo array. The first brought in front of Judge Coyle, in which the defendant argued that my neck size is noticeably different than the other individuals, and therefore it's unfair. We did provide the actual information regarding those particular individuals that were in that photo array to Judge Coyle. He found that there was not a significant difference and denied the motion to suppress. On the first day of trial, the motion was raised again, this time on the grounds that the background in Mr. Carrillo's photograph was different than the other backgrounds. Judge Wanger was the trial court judge, and he reviewed the photographs and made specific findings that they were not impermissibly suggestive. I think the law is very clear that there has to be a showing of clear error by the district court judge, and I don't believe it's there. Was that the only evidence of identification, or was it in court? No, that was not the only evidence of identification. The first robbery, it was an in-court identification by each of the people in each of the eight robberies. But in the first robbery, Mr. Carrillo Valenzuela was known to the clerk. He was a regular customer at that Cigarettes Cheaper store. She had known him from before. When he came in there, she recognized him as a regular customer. And when she's shown the photo line-up, she picks him out also. In addition, he came back and robbed her a second time. And when he comes back, he says, yep, it's me again. So we have almost an admission there. Also, in the last robberies, the defendant used a very—if I could have this. This is at 17B, which was the trial against the handgun. It's a very distinctive pistol that he used in the last three armed robberies in this case. That pistol, with the distinctive cowboy type, white, and crimson, was identified by the victim's clerks in the last three robberies. In addition, he was—that gun, in particular, gun was found hidden inside the engine compartment of his car when he was arrested in Mariposa County. So there was additional information in addition to the photo line-ups that the jury had to find the identification to be true and accurate. With respect to the Eighth Amendment argument, I believe that's pretty squarely foreclosed by this Court's prior holdings in Harris, Dare, and Labrada-Bustamante. Basically, the Booker just doesn't speak to mandatory minimums. The sentence in this case was extremely harsh. I don't want the Court to get the idea that— myself personally, I think that a 165-year sentence is a great thing. I do not. As a practical matter, we tried to resolve this case. I offered 27 years on it. Ms. Walcott counted with 25. We agreed to 25, but Mr. Carrillo Valenzuela just wouldn't go for it. Someday, maybe there may be a resolution by this particular issue in Congress where maybe there's a cap put on the consecutive sentences that can be imposed under 924C. But that's up to Congress. I really don't have much more I can say about it. Are there any other questions? I think so. Ms. Walcott, you have a couple of minutes left. Thank you, Your Honor. And briefly regarding the photo arrays, I wanted to— counsel put in his brief at page 18 a description of the heights and weights of the other men in the photo arrays. They range from 158 pounds to 285 pounds. The witness descriptions of Mr. Carrillo range from a low of 120 pounds to a high of 170 pounds and height from 5'4 to 5'9. I think the other gentlemen in the photo array that are described at page 18 are also about in that height range. But the weight range is noticeably different, and I think that a 20- and 40-pound weight difference is going to reflect itself, even in the photos that are obviously taken very high up near the collarbone area and above on the individuals in the photo array. Other than that, unless this Court has any additional questions, I would submit the argument. Okay. Thank you, counsel. Both of you. I'm going to return these to the clerk so they can be returned for safekeeping. Thank you. Valenzuela is submitted, and we will take up the case of McCodge v. Gonzalez.
judges: Noonan, Bybee, Schwarzer